[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2010
JOHN LEY
CLERK

_____

No. 09-15113

_____

D. C. Docket No. 07-00629-CV-J-25-MCR

JOHN EUGENE YOUMANS,

Plaintiff-Appellee,

versus

T. A. GAGNON,
#5715, in his official
and individual capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 16, 2010)

Before EDMONDSON, HILL and ALARCÓN,* Circuit Judges.

PER CURIAM

This case is about the defense of qualified immunity in situations involving delay in medical care for a pretrial detainee.

Plaintiff-Appellee, a pretrial detainee at the time of these events, was beaten (an occurrence in which Defendant-Appellant took no part) in connection with Plaintiff's arrest on robbery charges. He alleges that later Defendant, by booking and questioning Plaintiff before seeking medical care for his injuries, was deliberately indifferent to Plaintiff's serious medical need in violation of Fourteenth Amendment rights. He brought suit against Defendant in Defendant's individual capacity; Defendant moved for summary judgment on qualified immunity grounds. The District Court denied the motion; Defendant now appeals. We reverse the District Court's decision and conclude that Defendant is entitled to immunity from this suit.

## I. BACKGROUND

We view the facts in the light most favorable to Plaintiff.[1] See Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007). In June 2007, two law

_____

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] For this appeal, we assume these facts. We do not decide today that these assumed facts are entirely consistent with reality.

enforcement officers attempted to stop Plaintiff John E. Youmans on suspicion of robbery as he drove away from the scene of the crime. After Plaintiff briefly pulled over, he drove away. The officers gave chase in their cars, and Plaintiff pulled over again after about seven minutes; the officers arrested Plaintiff. Incident to Plaintiff's arrest, the officers beat him: Plaintiff alleges that one officer ripped his shirt, leaving portions of his torso exposed, and then pulled him from his truck by his hair. With Plaintiff's feet still in the truck and his torso on the ground, he was kicked and punched. As a result, Plaintiff had visible abrasions on his head, face, shoulder, elbow, and hand.

The arresting officers took Plaintiff to the police station for booking, where Defendant Timothy Gagnon met and interviewed Plaintiff and did some booking paperwork. The interview is recorded on video complete with sound, including the time Plaintiff was alone in the interview room while Defendant was out. Plaintiff confessed to the robbery but gave a false name and birth date. Defendant spent approximately thirty minutes learning Plaintiff's true identity. At the end of the booking process, officers handcuffed Plaintiff to take him to the detention facility; but then Plaintiff requested to speak to Defendant again. Plaintiff then spent about seven more minutes in animated discussion with Defendant, attempting to implicate Plaintiff's passenger in the robbery. Then Plaintiff was transmitted to a

3

detention facility.

Roughly four hours passed between the time that officers arrested and beat Plaintiff and the time that he received medical care; almost three of those hours were spent in Defendant's custody.[2] During this three-hour time, Plaintiff never specifically requested medical treatment. But Plaintiff groaned, exclaimed "ouch" and "ow," and appeared to be disoriented at times; he told Defendant that he thought the officers had "cracked something" in his hand and indicated once to Defendant that his vision was blurred.[3] Plaintiff had several cuts and abrasions on his head, face, shoulder, elbow, and hand; some blood was visible on Plaintiff. Despite the injuries, Plaintiff had sufficient use of his hands to sign an acknowledgment of his rights and to open and drink a can of lemonade; while Defendant was away, Plaintiff also attempted to use the top of the can to unscrew a panel covering the interview room's video camera.

Upon arriving at the detention facility from the police station, the nurse at

_____

[2] The record indicates that officers arrested Plaintiff at approximately 1:03 p.m.; he arrived at the station around 2:15 p.m.; and the jail nurse saw him at 5:17 p.m.

[3] Plaintiff spoke to himself at times when Defendant was outside of the room. Much of this speech is unintelligible to us even when Plaintiff's counsel has suggested what Plaintiff is saying. For example, Plaintiff's brief says Plaintiff—while Defendant was outside the room—indicated that he thought he had a broken shoulder. (Defendant acknowledged that he looked at the video monitors in real time when he was outside the interview room). Plaintiff's support for this claim is a citation to a point in the video, but the video does not support this claim: there are just unintelligible utterances. No reasonable jury could find that Plaintiff indicated to Defendant (through the video) that Plaintiff had a broken shoulder. See Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

4

the detention facility sent Plaintiff to the hospital. At the hospital, attending physicians diagnosed him with injuries consistent with blunt trauma: multiple contusions.[4] Plaintiff underwent MRIs, a CT scan, and x-rays. Physicians prescribed Motrin and Skelaxin (a muscle relaxant) and referred him to a trauma clinic for follow-up care. Plaintiff has drawn our attention to nothing in the record about any follow-ups.

Plaintiff filed suit against Defendant, alleging deliberate indifference to a serious medical need in violation of Plaintiff's Fourteenth Amendment rights.[5] Defendant moved for summary judgment on qualified immunity grounds. The District Court denied the motion. Defendant then filed this interlocutory appeal.

## II. DISCUSSION

### A. Qualified Immunity

We have jurisdiction over Defendant's interlocutory appeal under 28 U.S.C. § 1291 and the collateral order doctrine. See Bryant v. Jones, 575 F.3d 1281, 1288 n.2 (11th Cir. 2009). We "review de novo a district court's denial of a motion for summary judgment on qualified immunity grounds." Andujar, 486 F.3d at 1202.

---

[4] The record indicates that Plaintiff vomited after arriving at the hospital and that he self-described his pain-intensity level as ten out of ten. Defendant had no knowledge of these facts while Plaintiff was in Defendant's custody.

[5] Plaintiff also filed suit against the arresting officers in their personal capacities for use of excessive force; the arresting officers are not parties to this appeal.

5

The purpose of the qualified immunity defense is to "protect[] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982)). The defense "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 121 S. Ct. 2151, 2158 (2001). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Lassiter v. Ala. A&M Univ., Bd. of Trs., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).

Assessing a claim of qualified immunity involves a two-step process: once a defendant raises the defense, the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation. Pearson, 129 S. Ct. at 815-16. Following the Supreme Court's decision in Pearson, we are free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated. Id. at 818. In the present case, it seems best to proceed directly to the question of whether the applicable law was

6

already clearly established when the incident took place.

B.     "Clearly Established" Law

Whether or not Defendant's conduct constituted deliberate indifference to a serious medical need in violation of Plaintiff's Fourteenth Amendment rights,[6] the law applicable to these circumstances was not already clearly established at the time of the alleged violation.  A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue.[7]  See Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc).

In deciding about qualified immunity, we are considering what an objectively reasonable official must have known at the pertinent time and place; that is, we are examining "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation [the defendant officer] confronted.'"

---

[6] The Fourteenth Amendment governs claims of medical indifference to the needs of pretrial detainees while the Eighth Amendment applies to claims of convicted prisoners. Andujar, 486 F.3d at 1202 n.3.  Because the minimum standard for providing medical care to pretrial detainees is the same as the standard for providing medical care to convicted prisoners under the Eighth Amendment, see id., we consider as precedents cases decided under either amendment.

[7] Very occasionally, qualified immunity can be denied where the plaintiff establishes that the defendant's conduct so obviously violated federal law that the defendant must have known the acts violated federal law even in the absence of preexisting caselaw addressing materially similar facts.  See, e.g., Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926-27 (11th Cir. 2000).

Brosseau v. Haugen, 125 S. Ct. 596, 599 (2004) (emphasis added) (quoting Saucier, 121 S. Ct. at 2156); see also Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 121 S. Ct. at 2156.

The Supreme Court has warned against allowing plaintiffs to convert the rule of qualified immunity into "a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Anderson v. Creighton, 107 S. Ct. 3034, 3038-39 (1987). More than a general legal proposition—for example, to act reasonably—is usually required; if a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question. See Brosseau, 125 S. Ct. at 599 (noting that general tests may be sufficient to establish law clearly in "an obvious case"). Minor variations between cases may prove critical. See Marsh v. Butler Cnty, Ala., 268 F.3d 1014, 1032 (11th Cir. 2001) (en banc).

Thus, evaluating the "objective legal reasonableness" of an officer's acts requires examining whether the right at issue was clearly established in a "particularized" and "relevant" way. Anderson, 107 S. Ct. at 3039. The unlawfulness of a given act must be made truly obvious, rather than simply

8

implied, by the preexisting law.  See id.

With this understanding about the necessity of clear law being tied to the specific factual context, we turn to the issue in this case.  To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Id. at 1307 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).[8]  In general, serious medical needs are those "requiring immediate medical attention."  See Hill, 40 F.3d at 1190.

To prove "deliberate indifference" to a serious medical need, a plaintiff must show "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that

---

[8] Serious medical need might alternatively be established where the condition worsens due to a delay.  See Mann, 588 F.3d at 1307.  Here, because Plaintiff does not contend further injury from the delay in treatment, the proper test is whether a lay person would easily recognize the need as serious.  In addition, that a medical need might be recognizable by a trained medical professional, such as a nurse, is not enough.  Instead, the need for immediate medical assistance must have been apparent to the untrained eye of a layperson.  See id. at 1307-08.

9

risk; (3) by conduct that is more than [gross] negligence.'" Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)).  We conclude that neither the "serious medical need" nor the "deliberate indifference" element was established with such clarity in June 2007 that an objectively reasonable police officer in Defendant's place would have been on advance notice that Defendant's acts in this case would certainly violate the Constitution.

The best response to a serious medical need is not required by federal law in these cases.  Judicial decisions addressing deliberate indifference to a serious medical need, like decisions in the Fourth Amendment search-and-seizure realm, are very fact specific.  At a high level of generality, certain aspects of the law have been established: lengthy delays are often inexcusable, see Harris v. Coweta Cnty., 21 F.3d 388, 394 (11th Cir. 1994) (stating delay of several weeks in treating painful and worsening hand condition was deliberate indifference); shorter delays may also constitute a constitutional violation if injuries are sufficiently serious, see Bozeman, 422 F.3d at 1273 (delaying medical treatment for fourteen minutes was deliberate indifference where the plaintiff was not breathing during that time); and the reason for the delay must weigh in the inquiry, see id.  But specific cases of deliberate indifference are complicated: the threshold of deliberate indifference is

connected to combinations of diverse interdependent factual elements. And for the present case, it was not already clearly established as a matter of law in June 2007 that a four-hour delay for injuries of this kind violated the Fourteenth Amendment.

In fact, earlier cases considering injuries of similar consequence concluded that delays of roughly comparable length were acceptable for constitutional purposes.[9] For instance, in Andujar, a dog bit the plaintiff as he fled from police in 1999, leaving puncture wounds in the front and back of his thigh that impaired his ability to walk. 486 F.3d at 1201-03. The defendant paramedics applied a temporary bandage to stop the bleeding long enough for the plaintiff to be booked at the police station, but the plaintiff did not receive the stitches he needed until two hours after the bite. Id. at 1203-04. In that case, we concluded that the plaintiff's medical condition was not urgent and that the "short delay" of two hours was permissible to allow the police sufficient time to book the plaintiff. Id. at 1204.

In Hill, we concluded that a delay of four hours in seeking treatment for stomach pain, vomiting blood, and blood in the plaintiff's underwear did not constitute deliberate indifference where the delay was due to the official's need to

---

[9] While material differences exist between the facts of the present case and the facts of earlier cases cited here, the earlier cases are sufficiently similar to help to render the law applicable to the circumstances of this case unclear to an objectively reasonable officer.

11

finish feeding the rest of the inmates. 40 F.3d at 1190-92.

In addition, this Circuit -- before 2007 and with seeming agreement -- had cited other Circuits' cases that say that longer delays for similar injuries did not constitute deliberate indifference to a serious medical need.[10]  When decisional law is required for prior notice, the law can be clearly established by decisions of the U.S. Supreme Court, Eleventh Circuit, or the highest court of the state where the case arose.  See Jenkins ex rel. Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).  But in the absence of controlling precedent, cases decided outside this Circuit can buttress our view that the applicable law was not already clearly established.  We must not hold police officers to a higher standard of legal knowledge than that displayed by the federal courts in reasonable and reasoned decisions; where "judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."  Wilson v. Layne, 119 S. Ct. 1692, 1701 (1999); see also Barts v.

---

[10] See, e.g., Kane v. Hargis, 987 F.2d 1005, 1008-09 (4th Cir. 1993) (cited in Hill, 40 F.3d at 1190) (concluding that a four-hour delay in seeking medical treatment for "cracked teeth, a cut nose, and a bruised face" was not a constitutional violation where there was "no indication these injuries required immediate medical treatment"); Gaudreault v. Salem, 923 F.2d 203, 207-08 (1st Cir. 1990) (cited in Hill, 40 F.3d at 1188 n.24) (concluding that a ten-hour delay in providing treatment for "multiple bruises[] to the forehead, left and right orbits of his eyes, nasal area, left ribs, right flank and left shoulder, . . . a corneal abrasion and an abrasion on the upper back" and "'massive swelling' in the head" did not constitute deliberate indifference); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (cited in Hill, 40 F.3d at 1188 n.22) (concluding that a fourteen-hour delay in treatment for cuts, bruises, and a quarter-inch piece of glass embedded in the palm did not constitute deliberate indifference).

12

Joyner, 865 F.2d 1187, 1193 (11th Cir. 1989) ("We cannot realistically expect that reasonable police officers know more than reasonable judges about the law."). For background, see Marsh, 268 F.3d at 1039-40. In the present case, that this Court had cited cases of longer delays for similar injuries further confirms for us that an objectively reasonable police officer in Defendant's place would not have known that Defendant's conduct would violate Plaintiff's constitutional rights.

Cases cited by Plaintiff are too different from this case to make the law applicable to the circumstances of this case clearly established in June 2007. For example, Plaintiff cites Aldridge v. Montgomery, 753 F.2d 970 (11th Cir. 1985), where we denied qualified immunity to a defendant who delayed treatment of a serious bleeding cut for approximately two and a half hours. 753 F.2d at 972-73. Critical to our decision in that case was that the plaintiff's cut bled continuously during that time, causing blood to pool on the plaintiff's clothing and the floor; and the cut ultimately required six stitches. Id.

Nothing in the record in the present case shows that Plaintiff's cuts bled while in Defendant's custody; he ultimately did not require stitches. Significant, sustained bleeding requiring later stitches is a far greater indicator of a need for urgent medical care than the mere presence of cuts and bruises as in the present

13

case.[11]  See Hill, 40 F.3d at 1189 ("[Plaintiff] has not contended that there was continued bleeding that would signify an urgent or emergency situation. . . ."). This factual variance is the kind of variation between cases that makes a critical difference in determining whether the applicable law was already clearly established at the time the occurrence underlying this case arose.  We cannot say that Aldridge would provide an objective police officer with adequate advance notice that the conduct at issue in this case would violate Plaintiff's constitutional rights.

## III.  CONCLUSION

We conclude that it is not -- and most important, was not in June 2007 -- clear from the preexisting law that all objectively reasonable policemen would have known that a four-hour delay for booking and interviewing a person with

---

[11] Also, we note that the delay in Aldridge was due to officers "waiting for a detective to tell them what to do."  753 F.2d at 972.  This reason for delay differs from the facts of this case, where the delay occurred due to the need to interview and to book Plaintiff.  Earlier cases establish that the reason for a delay matters: a good reason may justify a delay.  See, e.g., Andujar, 486 F.3d at 1204 (stating that a delay to book the plaintiff was reasonable).  In the present case, that the delay in treatment extended no longer than the time to interview and book Plaintiff is undisputed; and Plaintiff does not contend that the period for interviewing and booking was, in itself, excessive.  The delay was also extended by Plaintiff's acts of giving a false name and then attempting to implicate his passenger.  Under earlier cases, a reasonable law enforcement officer could consider getting Plaintiff properly identified and determining if he acted alone to be valid reasons justifying some delay in treatment, given the injuries seemingly involved here.

injuries of the kind asserted here is a constitutional violation.[12] In reaching this conclusion, we stress that "[g]overnment officials are not required to err on the side of caution." Marsh, 268 F.3d at 1030 n.8. The District Court erred in deciding that Defendant was not entitled to the defense of qualified immunity.

REVERSED and REMANDED.

---

[12] We also note that Plaintiff did not request medical care. A person is not required to request medical care to prevail on a claim of deliberate indifference to a serious medical need. But in this situation, where Plaintiff engaged in conversation on different topics, Plaintiff's failure to request medical care supports our determination that objectively reasonable law enforcement officers -- held to the standard of a layperson, rather than a trained medical professional -- would not be on notice that Plaintiff needed immediate medical care.