[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11673
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 9, 2011
JOHN LEY
CLERK

D. C. Docket No. 9:09-cv-80872-JIC

NORREL SUTHERLAND, et al.,

Plaintiffs-Appellants,

versus

BRIAN ALLISON, et al.,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 9, 2011)

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Norrel Sutherland appeals from the district court's order granting summary

judgment on qualified immunity grounds to Defendants, Palm Beach County

Sheriff's Office Deputies Brian Allison and Max Perez (the "Deputies"), in his civil rights action, brought pursuant to 42 U.S.C. § 1983.[1]  In his complaint, Sutherland alleges that the Deputies violated the Fourth Amendment when they used excessive force in executing his arrest and violated the Fourteenth Amendment when they were deliberately indifferent to his medical needs during that arrest.  The district court held, however, that the Deputies' conduct during Sutherland's arrest comported with the Constitution and, accordingly, that the Deputies were protected from Sutherland's claims by the qualified immunity doctrine.  After thorough review of the record and the parties' briefs, we agree.

We review de novo the district court's resolution of a summary judgment motion based on qualified immunity.  McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).  In undertaking this de novo review,

> we are required to resolve all issues of material fact in favor of the plaintiff.  We then answer the legal question of whether the defendant is entitled to qualified immunity under that version of the facts.  Indeed, we approach the facts from the plaintiff's perspective because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.

---

[1]  Norrell and Nadia Sutherland have abandoned their claim pursuant to the Americans with Disabilities Act, and the district court remanded Norrel Sutherland's Florida common law claim of battery and his wife Nadina Sutherland's Florida common law claim of loss of consortium to the state trial court.

Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002) (internal quotation marks, citations, and alterations omitted).

The relevant facts, with disputed facts resolved in favor of Sutherland, are these. On February 17, 2008, the Deputies were dispatched to a public street in front of the Lake Worth Swap Shop after a local homeowner complained about illegally parked vehicles. After ticketing some vehicles, Deputy Allison saw Sutherland in a heated argument with a tow truck driver; Sutherland was standing on the side of the road, yelling, and waving a parking ticket. Deputy Allison directed Sutherland to move off of the road, and, after Sutherland refused and initiated a verbal confrontation, Deputy Allison placed him under arrest.

When arresting Sutherland, Deputy Allison grabbed his left arm near the shoulder, and pitched him forward so that the No Parking sign came within his line of vision. Then, Deputy Allison put his face near Sutherland's face, referred to him as an obscenity, and another Palm Beach County Sheriff's Office officer took Sutherland's right arm, which was severely injured in a previous incident, and pulled it behind his back and towards his left arm. Throughout this time, Sutherland resisted arrest. Eventually, Sutherland dropped to his knees while the two officers and Deputy Perez attempted to handcuff him. Multiple eyewitnesses

3

testified that Sutherland was struggling with the Deputies as they attempted to handcuff him.

Sutherland testified that, after the Deputies began trying to handcuff him, he told them that his right arm was "sick." Sutherland also testified that, during the handcuffing, one officer held Sutherland to the ground by placing his knee on his back while Deputy Allison pulled on Sutherland's right arm behind his back, which caused Sutherland excruciating pain and lead Sutherland to "black out" for a few moments. About an hour after his arrest, Sutherland was transported from the scene to the police station. While at the scene, the Deputies offered to call the paramedics and Sutherland declined. Sutherland, however, claims that later he requested "medical help" for his arm, and that the Deputies did not do anything. He saw a nurse at the police station before his release, but he again declined medical attention for his arm. Upon his release, Sutherland went to the hospital emergency room, had surgery on his right arm, and spent the ensuing week recovering in the hospital. Sutherland continues to suffer some pain and reduction in the movement of his right arm.

The district court granted summary judgment to the Deputies after finding that their conduct during Sutherland's arrest was protected by the qualified immunity doctrine. The qualified immunity defense "balances two important

4

interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). To be eligible for qualified immunity, the Deputies must demonstrate that they were acting in the scope of their discretionary authority. O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal quotation marks omitted).

Because it is undisputed that the Deputies acted within their discretionary authority when they arrested Sutherland, the burden shifts to Sutherland to show that qualified immunity should not apply. Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). "In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process. Traditionally, a court first determines whether the officer's conduct amounted to a constitutional violation. Second, the court analyzes whether the right violated was clearly established at the time of the violation." Id. (citations omitted); but see Pearson v.

5

Callahan, 129 S.Ct. 808, 818 (2009) (concluding that, while the two-step inquiry is "often appropriate," it is not "mandatory in all cases").

A claim of excessive force is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989); Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007). In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate. McCullough, 559 F.3d at 1206. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97.

The relevant factors in our determination of reasonableness include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight." Lee, 284 F.3d at 1198 (internal quotation marks and citation omitted). In addition, the extent of the injury suffered by the plaintiff is not determinative, because "reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." Id. at 1200 (internal quotation marks and citation omitted).

Viewing the facts in the light most favorable to Sutherland, the Deputies' conduct did not amount to a constitutional violation. While Sutherland's arrest did not involve a serious crime, he was standing on a public roadway engaging in a verbal confrontation with police officers and, when those officers attempted to handcuff him, he actively and continuously resisted arrest. In addition, while he was resisting arrest, Sutherland did not inform the Deputies that his right arm was previously injured until after they had begun placing the handcuffs on him. Moreover, even once he was being handcuffed, Sutherland failed to inform the Deputies of his arm injury in any meaningful way; all he said, while continuing to resist being placed in handcuffs, was that his right arm was "sick." He never explained what "sick" meant or the extent of his pre-existing injuries, and never told the Deputies their conduct was exacerbating his injury.

While Sutherland alleges that his injury is apparent upon viewing his arm, he was wearing a long-sleeved shirt that covered his right arm at the time of his arrest. And, although Sutherland's hand, which also shows signs of a severe injury, was visible, there was nothing on his hand to indicate that his arm was also injured. As we have noted, "a police officer need not credit everything a suspect tells him . . . [and] [t]his idea is especially true where the officer is in the process of handcuffing a suspect." Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002).

Finally, there is no evidence that the Deputies used any more force than they would usually use to handcuff any person who is the subject of an arrest. All the record reveals, when viewed in the light most favorable to Sutherland, is that the Deputies followed their usual protocol in executing a routine handcuffing of an individual. The Deputies pulled Sutherland's arm behind his back after they placed him on the ground and handcuffed his hands together behind his back. They had no reason to know that they should not follow their standard procedure with this particular arrestee, especially since he was actively resisting the arrest. The use of such de minimis force, without more, cannot support an excessive force claim. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of

8

physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). There is no evidence the Deputies used any level of force other than that a reasonable officer would use under similar circumstances. Accordingly, the district court did not err in finding that the Deputies had qualified immunity from Sutherland's excessive force claim.

The Deputies are also entitled to qualified immunity on Sutherland's deliberate indifference claim, which is premised on Sutherland's allegation that the Deupites acted with deliberate indifference towards his fractured arm during the hour between his arrest and his arrival at the police station. There was no constitutional violation here.

To prevail on his claim of deliberate indifference to serious medical need under the Fourteenth Amendment, Sutherland must show: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1307 (internal quotation marks omitted). To prove "deliberate indifference" to that serious medical need, the following must be shown: "(1) subjective

9

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Youmans v. Gagnon, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotation marks and brackets omitted).

While a fractured arm that requires surgery and a subsequent hospital stay is an objectively serious medical need, Sutherland has not demonstrated that the Deputies had any subjective knowledge of a risk of serious harm or that they had acted with more than gross negligence. First, there is no indication on the record, again viewed in the light most favorable to Sutherland, that either of the Deputies had any subjective knowledge that his arm had been fractured or was otherwise injured. Sutherland never informed the Deputies that he believed that was the case -- he stated only vaguely that his arm was "sick" and his injured arm was covered by a long-sleeved shirt -- and, when the Deputies offered him medical assistance, Sutherland declined. Nor, even if they had known about the fracture, did the Deputies act with more than gross negligence. They offered to call the paramedics to the scene and Sutherland declined. In addition, before driving to the police station, the Deputies adjusted Sutherland's handcuffs so that they were in front of, as opposed to behind, his body. After all, "[t]he best response to a serious medical need is not required by federal law in these cases," id., and it is unclear what more

10

the Deputies could have done with an arrestee who does not state the nature of his injury and who declines medical assistance.

Accordingly, the district court's grant of summary judgment to the Deputies is **AFFIRMED.**