MARTIN, Circuit Judge,
dissenting:
The majority awards qualified immunity to three Georgia Department of Corrections officials for their complete and permanent termination of Delma Jackson’s visitation privileges with her inmate husband. The officials first revoked Mrs. Jackson’s privileges based on her purported role in a prison hunger strike. But they did not restore her privileges when the strike ended on July 26, 2012. Neither did they reinstate her privileges when they returned visitation privileges to all others who had been denied visitation for the same reason. Indeed, by all accounts they have not restored her privileges to this day, nearly thirty months later. Because I am convinced that any stated legitimate penological purpose for revoking her privileges vanished sometime after the end of the hunger strike, and because qualified immunity cannot extend to protect the officials if their sole remaining motivation was to retaliate against Mrs. Jackson for her protected speech, I respectfully dissent.
I am not persuaded by the majority’s conclusion that our qualified immunity analysis can only look to the initial revocation communicated by the July 19, 2012 revocation letters. Specifically, I reject the idea that we are permitted to consider only the July 19, 2012 communication of the decision (which did not include an end-date for the action, as required by GDOC operating procedures), and must ignore the ongoing impact of that decision which still prevents Mrs. Jackson from seeing *1246 her husband now almost three years later. While certainly we must consider the letters, Mrs. Jackson’s First Amendment retaliation claim is not so limited. As the District Court correctly noted, Mrs. Jackson challenged the permanent suspension of her privileges. The officials have the authority at any point to reinstate Mrs. Jackson’s visitation privileges. Their continued failure to do so perpetuates the permanent suspension and should be considered as part of the qualified immunity analysis.
The District Court was right in observing that the officials did not offer any valid motivation for the permanent suspension of Mrs. Jackson’s privileges once the hunger strike ended. The officials returned visitation privileges to every other prison visitor whose rights had been revoked during the hunger strike. They suggest that Mrs. Jackson’s privileges were not restored due to incomplete paperwork. But even if that were true, Mrs. Jackson made clear her request to be able to visit her husband when she sought an injunction for reinstatement of her privileges nearly a year before her husband was allegedly given the proper paperwork. The officials knew then that Mrs. Jackson wanted her privileges back, but did not reinstate them.
The majority points out that qualified immunity is “judged based on the facts and the law present at the time that public officials make their decisions,” not “tak[ing] into account later facts or changes in the law.” Panel. Op. at 1242. While that may be true, all the cases they rely upon stand for the unremarkable principle that an officer who performs a single act which does not violate the law when performed, will not be stripped of that immunity just because of a later change in the law. See Messerschmidt v. Millender, 565 U.S. -, -, 132 S.Ct. 1235, 1244-45, 182 L.Ed.2d 47 (2012) (evaluating a police officers’ search subject to a magistrate’s warrant that was later held to be unconstitutionally overbroad); Pearson v. Callahan, 555 U.S. 223, 244-45, 129 S.Ct. 808, 822-23, 172 L.Ed.2d 565 (2009) (holding that officers did not lose the protection of qualified immunity when they relied on the existing legal standards at the time they acted, yet the law later changed); Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir.2010) (per curiam) (holding that it was not clearly established that a police officer who delayed medical treatment of an arrestee’s minor injuries for four hours during booking violated his constitutional rights). I do not read those holdings to apply here so as to prevent us from considering the officers’ ongoing decisions to revoke and refuse to reinstate Mrs. Jackson’s privileges. Neither do those cases stop us from evaluating whether the scope of the deprivation was reasonable at the time it was made.
The majority acknowledges that a decision that would warrant qualified immunity at the time it is made can have ongoing consequences. Panel Op. at 1242. And I understand that qualified immunity can attach to inaction just as it does to actions. See Goebert v. Lee Cnty., 510 F.3d 1312, 1331 (11th Cir.2007) (denying qualified immunity to jail administrator for his inaction in timely providing pretrial detainee with medical care). Our precedent does not require us to turn a blind eye when defendants’ ongoing inaction causes harm, especially where, as here, it was the same defendants’ earlier action that created the harm in the first place. Our analysis should begin anew once changing circumstances do away with the justification first given.
Imagine a police officer who impounds a car because he suspects it was involved in a hit and run. The police investigation later uncovers that a different car was used in the offense, but the officer does *1247 not release the impounded ear to the owner for more than two years. While the initial deprivation was justified, once it became clear that the impounded car was not involved in the crime, the officer’s inaction — his failure to release it to the owner without an additional lawful motive— should no longer be protected by qualified immunity. I read the majority’s holding in this case to require us to look only at the initial decision to impound, with the officer then protected by qualified immunity for the entire sequence of events that follows. I do not understand our precedent to dictate such a result.
Even if the majority were correct that the officials “made just one decision with respect to Mrs. Jackson’s visitation privileges, the decision found in the July 19, 2012 letters,” Panel Op. at 1241, I would not hold that the decision is entitled to complete qualified immunity. The letters imposed a permanent revocation of Mrs. Jackson’s visitation privileges. GDOC Standard Operating Procedures require notice of the “reason for and length of the [revocation].” The officers’ stated reason for revocation was related to the hunger strike, but the letters contained neither a date on which the revocation would end nor a statement that the privileges would be reinstated when the hunger strike was over. In light of those facts, I do not believe that defendants have offered a lawful motive for the breadth of the letters for purposes of qualified immunity.
I would affirm the District Court’s partial grant of qualified immunity.