[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12837
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00157-MW-CJK


RUTH MITCHELL,
as personal representative of the Estate
of James Timothy Buchanan on behalf of
the Estate and the Survivors Jonathan Buchanan,
Ashley Buchanan, and Presley Buchanan,

Plaintiff-Appellant,

versus

FRANK MCKEITHEN,
as Sheriff of Bay County,
THERESA PRICE,
Individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 29, 2016)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

James Buchanan suffered an intracerebral hemorrhagic stroke while in custody at the Bay County Jail in Panama City, Florida. Because it was not discovered quickly enough, medical personnel were not able to intervene and treat Buchanan in time. After he suffered the effects of the stroke, and at his family's request, Buchanan was treated with comfort measures alone, before he tragically passed away. Ruth Mitchell, the personal representative of his estate, then brought this § 1983 action and wrongful death claim under Florida state law against Theresa Price, a nurse, for failing to treat Buchanan in violation of his constitutional rights. The complaint also asserted a claim against the Sheriff of Bay County under a supervisory liability theory. The district court granted summary judgment for both defendants on the §1983 claims, finding no constitutional violation, and alternatively held that both defendants were entitled to qualified immunity. The district court declined to exercise supplemental jurisdiction over the Florida law wrongful death claim, and dismissed it without prejudice so it could be brought in state court. Our careful review persuades us to affirm the district court. Because we conclude there was no constitutional violation here, we need not and do not address qualified immunity.

2

I.

Buchanan became an inmate at the Bay County Jail (the "Jail") on March 30, 2012. At 8:00 PM on April 20, 2012, one of the corrections officers at the Jail discovered that Buchanan had been vomiting. The officer checked on Buchanan, who admitted he was feeling ill but declined an offer to be brought to a nurse. Buchanan continued vomiting as the evening wore on, and at about 9:30 PM, the corrections officer took Buchanan to receive medical attention from Nurse Theresa Price.

Corrections officers told Nurse Price that Buchanan was "acting odd" and had vomited many times. They also informed her that Buchanan had a history of drug and alcohol abuse, and that they suspected he had either consumed someone else's medication or drank some "hooch," a rudimentary jail-made alcohol. Buchanan walked, without help, into the room Nurse Price was in, sat down, and told her he was "ok." His vitals—blood pressure, body temperature, pulse, and respiration—were all normal. However, when asked where he was, Buchanan's answers were incoherent and he could not maintain eye contact.

Nurse Price filled out a "Pre-Segregation Health Evaluation" form as part of her examination. She completed most of the form, noting Buchanan's vomiting, disorganized and illogical thought processes, and listless and childlike emotional state. However, she left blank the neurological portion of the form, so she entered

3

no evaluation of Buchanan for headache/dizziness, speech slurring, unequal pupils, or gait.  Nurse Price decided nothing was physically wrong with Buchanan, but referred him for a mental health evaluation.  In the meantime, Buchanan was placed in behavioral observation due to his disorientation and incoherent answers to earlier questions.

On the way to his observation cell, Buchanan seemed sick and was brought a trash can.  The corrections officers overseeing the behavioral observation part of the Jail checked on Buchanan in his cell periodically.  He eventually appeared to be sleeping.  At 6:05 AM, one corrections officer entered Buchanan's observation cell to feed him breakfast.  The officer found Buchanan had urinated on himself and was laying on his back, unresponsive.  The officer called for medical assistance, and Buchanan was promptly taken to a local hospital where he was diagnosed with a ruptured brain hemorrhage, or stroke.

Tragically, Buchanan's trip to the hospital came too late.  A neurological evaluation revealed that intervention at the time Buchanan arrived at the hospital would have had no effect, and if Buchanan survived, he would be in a persistent vegetative state.  Following his family's wishes, medical personnel used only comfort measures to treat Buchanan until his death on April 23, 2012.  An autopsy confirmed the cause of death as a ruptured intracerebral hemorrhagic stroke.  According to a forensic pathologist, if the stroke had been caught earlier, it is

4

likely Buchanan would have survived.  The pathologist also said it is possible that someone with more medical training than Nurse Price would have recognized Buchanan's symptoms as a stroke and sought appropriate medical treatment in time.

Ruth Mitchell, the personal representative of Buchanan's estate, then brought this § 1983 action against Nurse Price in her individual capacity and Sheriff McKeithen in his official capacity.  The district court granted summary judgment for both defendants, finding that Nurse Price did not violate Buchanan's constitutional rights, and therefore Sheriff McKeithen could not have supervisory liability.  Alternatively, the district court found both defendants were entitled to qualified immunity.  After granting summary judgment on the § 1983 claims, the district court then declined to exercise supplemental jurisdiction over the Florida law wrongful death claim, dismissing it without prejudice so that Mitchell could bring it in state court.

## II.

We review <u>de novo</u> the district court's grant of summary judgment, considering the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party.  <u>Rioux v. City of Atlanta</u>, 520 F.3d 1269, 1274 (11th Cir. 2008).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53 (1986).

Mitchell argues that the district court erred in granting summary judgment for Nurse Price and Sheriff McKeithen, both because they were deliberately indifferent and because they are not entitled to qualified immunity. We conclude there was no constitutional violation. This conclusion leaves us with no need to evaluate the district court's finding about qualified immunity, so we do not.

### A.

Mitchell argues that Nurse Price violated Buchanan's Fourteenth Amendment rights by failing to treat him. She says that Nurse Price failed to perform the proper medical evaluation, pointing to the portion of the "Pre-Segregation Health Evaluation" form that was left blank, and the fact that Nurse Price chose that form over an "Inmate Appraisal" form. Mitchell asserts this shows that Nurse Price intended to place Buchanan in behavioral segregation to begin with rather than considering sending him for further medical treatment.

In order to prove a constitutional violation, Mitchell must show that there was "deliberate indifference" to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291 (1976). This standard applies to pretrial detainees and prisoners, for both Eighth Amendment claims and Fourteenth Amendment due process claims. See Aldridge v. Montgomery, 753 F.2d 970, 972

(11th Cir. 1985) (per curiam).  To prevail on this claim, Mitchell must show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam) (quotation omitted and alteration adopted).

Assuming that Buchanan had a serious medical need,[1] we hold that Mitchell did not show a deliberate indifference to that need.  Such a showing requires: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Id. at 564 (quotation omitted and alteration adopted).  To prevail, Mitchell must therefore demonstrate that Nurse Price was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and must also have drawn the inference."  Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008) (quotation omitted and alterations adopted).  "No liability arises under the Constitution for an official's failure to alleviate a significant risk that [she] should have perceived but did not."  Id. at 1331 (quotation omitted).

We agree with the district court that there is no evidence that Nurse Price was subjectively aware of a risk of serious harm to Buchanan.  Nothing in the

---

[1] The standard for proving a "serious medical need" is quite exacting.  This Court defines it as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Youmans, 626 F.3d at 564 (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

record indicates that Nurse Price was aware Buchanan was suffering a stroke, understood his condition, or disregarded that risk.  In fact, the record shows she thought Buchanan had a mental condition, and referred him for (what she thought was) appropriate treatment.  Perhaps Nurse Price should have perceived Buchanan's symptoms as reflecting physical harm.  But the law does not hold her responsible for that.  See id.; Campbell v. Sikes, 169 F.3d 1353, 1366–67 (11th Cir. 1999) (noting that a misdiagnosis is not sufficient for the subjective intent prong of deliberate indifference unless the defendant knowingly did so).

Mitchell points out that Nurse Price left the "neurological" section of the evaluation form blank and used the "Pre-Segregation Health Evaluation" form rather than an "Inmate Appraisal" form.  She argues that this demonstrates Nurse Price intended from the beginning to place Buchanan in behavioral observation rather than send him to get further medical treatment.  Taking that argument as true, as we must, it does not mean Nurse Price was subjectively aware of Buchanan's medical need—intracerebral hemorrhagic stroke—or that her indifference to his medical need rose to the level of more than gross negligence. We therefore conclude that Nurse Price did not violate Buchanan's constitutional rights.

8

B.

Mitchell also argues that Sheriff McKeithen has supervisory liability.  To establish supervisory liability in a § 1983 action, "a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."  Keith v. DeKalb Cty., 749 F.3d 1034, 1047–48 (11th Cir. 2014).  Mitchell does not assert that Sheriff McKeithen directly participated, but argues that his actions had a causal connection to the alleged constitutional violation.  However, because Nurse Price did not violate Buchanan's constitutional rights, Sheriff McKeithen cannot be liable.  See id.  As a result, we affirm the district court.

**AFFIRMED.**