[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10022

Non-Argument Calendar

_____

BILLY PACKER,

Plaintiff-Appellant,

*versus*

JACQUES LAMOUR,
Medical Director,

Defendant- Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 2:18-cv-00473-SPC-MRM

_____

Before WILSON, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Billy Packer, a detainee at the Florida Civil Commitment Center ("FCCC") who is proceeding *pro se*, appeals the district court's resolution of cross-motions for summary judgment in his action alleging deliberate indifference to his serious medical needs and medical malpractice. He argues that the district court erred in granting summary judgment in favor of medical director Dr. Jacques Lamour on his deliberate indifference claim. For the reasons stated below, we affirm.

## I.

We review a district court's disposition of cross-motions for summary judgment *de novo*, viewing all evidence, as to each motion, in the light most favorable to the non-moving party. *Am. Bankers Ins. Group. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Summary judgment is appropriate if the movant can establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A district court cannot base entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion, including whether the motion is supported by evidence. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Mia., Fla.,* 363 F.3d 1099, 1101 (11th Cir. 2004).

Although *pro se* pleadings are liberally construed, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). The non-moving party may not rely solely on the pleadings to defeat a motion for summary judgment, but rather must rely on affidavits, depositions, answers to interrogatories, and admissions to show that there are specific facts demonstrating that there is a genuine issue for trial. *Id.* "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015).

## II.

When a convicted prisoner alleges that officials acted with deliberate indifference to his serious medical need, he proceeds under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). However, a civilly committed detainee brings such a claim under the Due Process Clause of the Fourteenth Amendment, which promises that no State shall "deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1; *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020). Detainees who have been involuntarily civilly committed are due a higher standard of care than prisoners because the conditions of confinement for the criminally committed are designed to punish, while those of the civilly committed are not.

*Bilal*, 981 F.3d. at 912.  Accordingly, Fourteenth Amendment substantive-due-process rights are at least equivalent to the comparable Eighth Amendment rights of those incarcerated, and thus, "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed."  *Id.* at 915 (quoting *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996))).

To prevail on a claim of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment, the plaintiff must show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (alteration accepted) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).  "This analysis contains both an objective and a subjective component." *Gilmore*, 738 F.3d at 274.  The "plaintiff must first show an objectively serious medical need that, if unattended, posed a substantial risk of serious harm, and that the official's response to that need was objectively insufficient."  *Id.*  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (quoting *Youmans*, 626 F.3d at 564).  Then, "the plaintiff must establish that the official acted with deliberate indifference."  *Id.*  To prove that an official acted with deliberate indifference, the plaintiff must show that the official (1) had subjective knowledge of a risk of serious harm,

(2) disregarded the risk, and (3) displayed conduct beyond mere negligence. *Id.*

Deliberate indifference to serious medical needs can include "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016). Courts are hesitant to conclude that a doctor was deliberately indifferent when the plaintiff received medical care. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). A mere difference in medical opinion does not constitute deliberate indifference. *Id.* at 1033. We have also held that although a prisoner may have desired different modes of treatment, the care provided, which consisted of multiple infirmary visits and prescribed treatments, did not amount to deliberate indifference. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

While a delay in medical care that is "tantamount to 'unnecessary and wanton infliction of pain'" can constitute deliberate indifference, *Adam v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990))), a matter of medical judgment does not represent deliberate indifference, *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Deliberate indifference in the form of an unreasonable delay is cognizable when officials delay treatment for life-threatening emergencies, but also in "situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill v. Dekalb Reg'l Youth Det. Ctr.*,

40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).  Ultimately, however, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.*

For example, in *Gilmore*, we held that substantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need.  *Id.* at 276.  Nevertheless, we cautioned that not all hearing loss amounts to a serious medical condition and noted that if a detainee could carry on a normal conversation and hear and follow directions without the use of a hearing aid, his impairment likely would not constitute a serious medical need.  *Id.* at 276–77.  We also noted that, even if a detainee has substantial hearing loss that could be remedied with a hearing aid, if an official were unaware of the detainee's condition or its extent, he could not be found to have acted with deliberate indifference.  *Id.* at 277.

In *Youngberg v. Romeo*, the Supreme Court recognized that people "who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," while emphasizing that "courts must show deference to the judgment exercised by a qualified professional." 457 U.S. 307, 321–22 (1982).  The Court limited judicial review of challenges to conditions in state institutions, noting that there was no reason to think that courts were more qualified than the appropriate professionals

in making decisions about the internal operations of such institutions and, thus, held that decisions made by professionals were presumptively valid. *Id.* at 322–23.

Here, the district court did not err in granting summary judgment in favor of Lamour as to Packer's Fourteenth Amendment claim because Packer failed to show that there was a genuine issue of material fact. First, Packer failed to respond to Lamour's motion for summary judgment, despite a court order advising him that failure to do so would signify that he did not oppose the motion and cause him to admit any properly supported facts submitted by Lamour and that he could not rely solely on allegations in his complaint to oppose that motion.

Second, Packer failed to establish a genuine issue as to whether the hearing loss in his right ear was a serious medical need. While the record shows that an audiologist diagnosed Packer with profound hearing loss in the left ear and moderate hearing loss in the right and recommended hearing aids for both ears, not all hearing loss amounts to a serious medical condition. *See Gilmore*, 738 F.3d at 274. Even though Packer alleged that his hearing loss affected his communications with residents and staff and led to altercations with both, he did not file any evidence supporting those allegations, beyond a resident communication form he filed in April 2018 requesting a second hearing aid be ordered, and his "[c]onclusory allegations and speculation [we]re insufficient to create a genuine issue of material fact." *See Valderrama*, 780 F.3d at 1112.

Even assuming there was a genuine issue as to whether Packer's need for a second hearing aid was a serious medical need, there was not a genuine issue as to whether Lamour was deliberately indifferent to that need. First, the undisputed facts show that Packer received medical care in the form of numerous visits with medical professionals at FCCC and with an audiologist for over three years, as well as the left hearing aid and a pocket talker. *See Waldrop*, 871 F.2d at 1035 . While Foster recommended both hearing aids and Lamour thought Packer needed only one, a difference in medical opinion does not constitute deliberate indifference. *See id.* at 1033. And while Packer disagreed with Lamour's medical decisions, the care that Lamour provided by ordering one hearing aid and a pocket talker, as well as the numerous visits regarding the functioning of Packer's hearing aid, did not amount to more than negligent conduct. *See Hamm*, 774 F.2d at 1575. Furthermore, as a professional making decisions at the FCCC, Lamour's opinion was presumptively valid and entitled to judicial deference. *See Youngberg*, 457 U.S. at 321–23.

Finally, Packer failed to argue on appeal that the district court erred in dismissing his state-law medical malpractice claim and has thus abandoned the issue. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that, while *pro se* pleadings must be liberally construed, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned").

In sum, the district court did not err in granting summary judgment for Lamour, dismissing Packer's deliberate indifference

21-10022               Opinion of the Court                    9

claim with prejudice, and dismissing Packer's state-law medical malpractice claim without prejudice. We therefore affirm.

**AFFIRMED.**

21-10022                ROSENBAUM, J., Concurring                1

ROSENBAUM, Circuit Judge, Concurring:

I concur in the judgment but write separately because I would not conclude that Packer failed to establish a genuine issue about whether his hearing loss in his right ear was a serious medical need. As the Majority Opinion notes, the audiologist to whom the prison sent Packer diagnosed Packer with moderate hearing loss in his right ear and concluded that Packer "NEED[ed]" a hearing aid for that ear. In my view, at the very least, that creates a material issue of fact about whether Packer's right-ear hearing loss was a serious medical condition.

Not only that, but Packer explained that, without the right-ear hearing aid, he can't engage in "proper communication," so his "communication with the staff, and residents proceed[s] to turn into altercations." This only adds to why a material issue of fact exists concerning whether Packer's right-ear hearing loss was a serious medical condition.

That said, though, I agree with the Majority Opinion that, even assuming a genuine issue of fact about whether Packer's right-ear hearing loss was a serious medical condition, under our precedent, there is no genuine issue of fact about whether Lamour was deliberately indifferent to that need. That is so because Packer received medical care in the form of several visits to medical professionals at FCCC and with an audiologist for over three years, as well as the left hearing aid and a pocket talker. A pocket talker uses headphones to amplify sound closest to the listener while reducing background noise. So the record reflects that Lamour was and

2                      ROSENBAUM, J., Concurring                     21-10022

continued to be responsive to Packer's needs.  And as the Majority Opinion notes, Lamour's difference in opinion with the audiologist over the best way to address Packer's less severe right-ear hearing loss, without more, does not satisfy the standard of deliberate indifference.

For these reasons, I concur.