[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14123
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-01558-KOB

STEPHEN HAMMONDS,

Plaintiff-Appellant,

versus

ROBERT THEAKSTON, et al.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 3, 2020)

Before GRANT, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

I.

On September 29, 2014, Stephen Hammonds, a Type 1 diabetic who takes insulin, was arrested on charges of possession of a controlled substance, possession of drug paraphernalia, and failure to appear – domestic violence third degree; he was booked into the DeKalb County Correctional Center later that day. Jail personnel confiscated short-acting R insulin and long-acting N insulin from Hammonds when he was booked.[1]

Dr. Robert Theakston treated Hammonds at the DeKalb County Correctional Center. He placed Hammonds on an insulin sliding scale regimen in which medical staff checked Hammonds's blood sugar twice a day. When his blood sugar was unhealthy, medical staff would administer a dose of short-acting insulin. The sliding scale regimen involved only short-acting insulin and no long-acting insulin.

Hammonds alleges that jail staff knew that he required both short- and long-acting insulin because (1) he had both types of insulin in his possession when he was arrested; (2) he told the arresting police officer, booking officer, nurses, jailers, and others that he needed both insulins; and (3) he had been held and

---

[1] Short-acting insulin counteracts the spike in glucose that occurs when eating. Long-acting insulin helps maintain a healthy baseline glucose level.

treated at DeKalb County Correction Center twice before, and on both occasions Dr. Theakston was the jail physician.[2]

Five days into his incarceration, on October 3, 2014, Hammonds felt "very sick" and feared that he "might not live." He called his parents and said he might die. Hammonds's mother called 911 to report that Hammonds was having a medical emergency at the jail. The 911 operator reported the same to Chief Jail Administrator Matthew Martin. According to an affidavit from Hammonds's mother, Martin called Hammonds's mother back and said that "he was going to make some arrests if anyone called 911 again and that he was tired of having his supper interrupted." Hammonds alleges that jail staff then brought him to a phone so that Martin could tell him that he would be placed in solitary confinement if his family called 911 again, after which "things would get worse for [Hammonds] and [his] family."[3]

Over the next two days, jail medical staff struggled to treat Hammonds's high blood sugar, and on October 5, Dr. Theakston ordered jail medical staff to transport Hammonds to the DeKalb County Regional Medical Center emergency

---

[2] In 2007, Hammonds was in the DeKalb County Correction Center and was treated with both short- and long-acting insulin. In 2013, Hammonds was treated at the DeKalb County Correction Center and—although he reported that he needed both short- and long-acting insulin—he was only given short-acting insulin (without incident).

[3] Martin disputes the facts alleged by Hammonds. For the purposes of summary judgment, we accept Hammonds's version of the facts as true. *See Case v. Eslinger*, 555 F.3d 1317, 1324–25 (11th Cir. 2009)

room for diabetic ketoacidosis.  The diabetic ketoacidosis was resolved by October 8, 2014.  The hospital discharged Hammonds back to the DeKalb County Correctional Center and instructed jail medical staff to administer a mixture of short- and long-acting insulin twice a day and to call the hospital if Hammonds's blood glucose level exceeded 400 mg/dl.

In the eight days following Hammonds's discharge from the hospital, he twice had a blood glucose level above 400 mg/dl.  Jail personnel did not call the hospital on either occasion.  Additionally, medical records indicate that jail staff sometimes administered a dose of short-acting insulin smaller or larger than the dose required by the hospital's instructions.  The DeKalb County Correctional Center released Hammonds on October 16, 2014, eight days after he was discharged by the hospital.

Hammonds now suffers from diabetic peripheral neuropathy, which he alleges was caused by the diabetic ketoacidosis that he suffered at the DeKalb County Correctional Center.  Hammonds brought a claim under 42 U.S.C. § 1983 against Dr. Theakston and Martin in their individual capacities, alleging that they violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs.  U.S. Const. amend. VIII.

Dr. Theakston and Martin moved for summary judgment.  The District Court granted summary judgment to both defendants, finding that both Dr. Theakston

4

and Martin are entitled to qualified immunity.  In reaching its conclusion, the District Court did not address whether Dr. Theakston or Martin violated Hammonds's constitutional rights.  Instead, the District Court addressed only qualified immunity.  Hammonds appeals.

## II.

We review "de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of Plaintiffs and then answering the legal question of whether Defendants are entitled to qualified immunity under that version of the facts." *Case v. Eslinger*, 555 F.3d 1317, 1324–25 (11th Cir. 2009) (quoting *West v. Tillman*, 496 F.3d 1321, 1326 (11th Cir. 2007)).

Government officials are shielded by qualified immunity when they act within the scope of their discretionary authority, *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991), and when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

## III.

### A.

On appeal, Hammonds argues that the District Court erred by addressing qualified immunity first and not addressing Hammonds's allegations that Dr. Theakston and Martin violated his constitutional rights.  We disagree.  It is well settled in this Circuit that we may address the two core questions in a qualified immunity case—that is, (1) whether the official violated the plaintiff's constitutional rights, and (2) if so, whether those rights were clearly established— "in either order."  *Waldron v. Spicher*, 954 F.3d 1297 (11th Cir. 2020) (quoting *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)).[4]

## B.

Hammonds also argues that the District Court erred in granting Dr. Theakston qualified immunity on the basis that Hammonds failed to show that Dr.

---

[4] The U.S. Supreme Court has held that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."  *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 1714 n.5 (1998) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793 (1991)).  As we have explained, however:

> We do not understand [*County of Sacramento*] as an absolute requirement that lower courts must always follow this "normally" "better approach."  In *County of Sacramento*, the district court decided the case strictly on qualified immunity grounds, that is, on the ground of the unsettled nature of the law; but the Supreme Court never said the district court erred.  And if the Supreme Court intended to impose an absolute requirement on lower courts always to address the merits of constitutional issues even where qualified immunity obviously applies and readily resolves the case, we believe the Supreme Court would have said so more directly.

*Santamorena v. Ga. Military Coll.*, 147 F.3d 1337, 1343 (11th Cir. 1998) (footnote omitted).

Theakston violated a clearly established right.  For the following reasons, we agree with the District Court.

We have identified three ways for a plaintiff to prove that a particular constitutional right is clearly established: (1) "[A] plaintiff can show that a materially similar case has already been decided," (2) "a plaintiff can also show that a broader, clearly established principle should control the novel facts of a particular case," or (3) "a plaintiff could show that the case fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary."  *Waldron*, 954 F.3d at 1304–05 (citations omitted) (internal quotation marks omitted) (alterations adopted).

To demonstrate that his right to receive more than just short-acting insulin was clearly established, Hammonds makes two arguments.  First, Hammonds argues that a single case, *Flowers v. Bennett*, 123 F. Supp. 2d 595 (N.D. Ala. 2000), establishes that Dr. Theakston's treatments constituted deliberate indifference.  We can dispose of this argument quickly: "[C]learly established law consists of holdings of the Supreme Court [of the United States], the Eleventh Circuit, or the highest court of the relevant state."  *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).  Because it is a district court opinion, *Flowers* is insufficient to clearly establish the law for Hammonds's claim.

7

Second, Hammonds argues that existing law clearly established the broad principle that "jail officials should not act with deliberate indifference to the serious medical needs of pretrial detainees." We agree that, as a general matter, the deliberate disregard of a pretrial detainee's serious medical needs violates the detainee's constitutional rights. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). But cases addressing deliberate indifference to serious medical needs "are very fact specific," *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010), and we hold that *Estelle*'s general rule does not obviously apply to the specific circumstances of this case—treatment of Type 1 diabetes with only short-acting insulin.

To demonstrate that a principle is "clearly established," a plaintiff must show that "preexisting law [] make[s] it obvious that the defendant's acts violated the plaintiff's rights in the *specific set of circumstances* at issue." *Youmans*, 626 F.3d at 563 (emphasis added). The unlawfulness of the defendant's acts must be "made truly obvious, rather than simply implied, by the preexisting law." *Id.* And to prevail on a claim of deliberate indifference to serious medical need, a plaintiff must demonstrate (1) a serious medical need and (2) "that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

The first prong, "a serious medical need," is objective. *Id.* "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations omitted). For either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Farrow*, 320 F.3d at 1243 (alteration in original) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)).

The "deliberate indifference" prong, on the other hand, is subjective. *Id.* To meet the "onerous" deliberate indifference standard, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), a plaintiff must demonstrate "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (citation omitted) (alteration in original). The Constitution does not require that a detainee's medical care be "perfect, the best obtainable, or even very good." *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991). Rather, for treatment (or lack thereof) to amount to deliberate indifference, it must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505 (quotation omitted). For example, we have held that "[w]hen the need for treatment is obvious, medical care

9

which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (alteration in original) (emphasis added) (citations omitted).  Likewise, "[d]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *Id.* (citations omitted).

On the "serious medical condition" prong, we find that Hammonds's Type 1 diabetes is a "serious medical condition" within the meaning of our precedents, and Dr. Theakston does not meaningfully contest this point.  Appellees' Br. at 24–27 (focusing on the "deliberate indifference" prong and calling Hammonds's Type 1 diabetes "his serious medical need").  The evidence shows that Hammonds was diagnosed with Type 1 diabetes by a physician in 1994 and that Hammonds generally managed his blood sugar levels by administering himself a mixture of insulin.  The evidence also reveals that Hammonds's diabetes led to hypoglycemic and hyperglycemic episodes, and he required emergency medical care for his diabetes on multiple occasions.  This evidence is sufficient to show that Hammonds had a serious medical need.

But the subjective prong, "deliberate indifference," is a very high bar: Hammonds must show that the treatment he received from Dr. Theakston was "grossly inadequate" or "so cursory as to amount to no treatment at all." *Brown*,

10

387 F.3d at 1351.  In an effort to make this showing, Hammonds relies on the testimony of his expert, Dr. Venters, who stated that he had "almost never seen a patient who is known to be insulin dependent be given only short-acting insulin" and that it was his "sense" that short-acting insulin alone would be insufficient treatment.  By contrast, one of Dr. Theakston and Martin's experts, Dr. Trippe, testified that treating Type 1 diabetes with short-acting insulin alone was a "reasonable" protocol given the difficulties of providing medical treatment to inmates.  And Dr. Theakston and Martin's other expert, Dr. Jones, testified that treating Hammonds with only short-acting insulin was "reasonable" until a "baseline insulin need" was established.

We have recognized that courts have a difficult job in these "battle of the expert" situations: "Confronted with an inmate who has a serious medical condition, a reviewing court hears from experts about measures that (in their view) would provide the most effective treatment.  When the court then sees evidence that prison authorities aren't taking those measures—that perhaps they could be doing more, doing better—it concludes that liability must presumably follow." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).  But we do not operate under a "perhaps they could be doing more" standard.  *See id.* Instead, the question before us is whether preexisting case law—that is, case law predating September 29, 2014—made it obvious that Dr. Theakston's treatment of

11

Hammonds's diabetes with only short-acting insulin would be *conscience-shocking*. *See Harris*, 941 F.2d at 1505. For at least three reasons, we conclude that it did not.

First, Hammonds's expert's testimony does not establish that Dr. Theakston's course of treatment was so grossly inadequate or cursory "*as to amount to no treatment at all*." *Brown*, 387 F.3d at 1351 (emphasis added). Hammonds's expert, Dr. Venters, hedged that he had "*almost* never seen" an insulin-dependent patient treated with only short-acting insulin. (emphasis added). And the mere fact that Dr. Venters had a "sense" that short-acting insulin alone was inadequate is not enough: "[W]here a prisoner has received *some* medical attention and the dispute is over the *adequacy* of the treatment, federal courts are generally reluctant to second guess medical judgments." *Harris*, 941 F.2d at 1507 (emphasis added) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). It is undisputed that Dr. Theakston provided Hammonds with some medical care (short-acting insulin), and we will not second-guess Dr. Theakston's medical judgment now.

Second, jail officials are not required to provide a detainee with the precise treatment the detainee requests. *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

12

That is exactly what happened here: Dr. Theakston may not have provided Hammonds with the *precise* treatment that Hammonds wanted (a combination of short- and long-acting insulin), but he did not turn a blind eye to Hammonds's medical needs.  This falls well short of conscience-shocking conduct.

Third, and relatedly, Dr. Theakston treated Hammonds's diabetes in 2013 with only short-acting insulin without incident.  It is difficult to imagine how—after treating Hammonds with only short-acting insulin in the past—an objectively reasonable prison official in Dr. Theakston's place could "have been on advance notice that [his] acts in this case would *certainly* violate the Constitution." *Youmans*, 626 F.3d at 564 (emphasis added).  As a matter of common sense, it would be an odd result for us to deny Dr. Theakston qualified immunity because, after successfully managing Hammonds's diabetes with only short-acting insulin in 2013, he decided to follow the same course of treatment in 2014.  Dr. Theakston's decision "'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293).

As a result, we hold that the law did not clearly establish that providing Hammonds with only short-acting insulin would amount to deliberate indifference

13

to Hammonds's serious medical need.  We accordingly affirm the District Court's grant of qualified immunity to Dr. Theakston.

C.

Hammonds also appeals the District Court's grant of summary judgment in favor of Martin.  Hammonds argues that Martin, a nonmedical official who supervised Dr. Theakston, knew Hammonds was a Type 1 diabetic, knew he was in medical need, and did nothing.  Hammonds's argument is foreclosed by *Keith v. DeKalb County*, 749 F.3d 1034 (11th Cir. 2014).

In *Keith*, a DeKalb County Jail pretrial detainee, Godfrey Cook, was murdered by his cellmate.  *Id.* at 1038.  The administrator of Cook's estate, Nadine Keith, brought a § 1983 claim against DeKalb County Sheriff Thomas Brown.  *Id.* The DeKalb County Jail placed inmates in holding cells upon booking and then classified the inmates to determine where to place them.  *Id.* at 1039.  Inmates were classified based on criminal history and medical and mental health risk.  *Id.* Medical staff spearheaded the medical and mental health risk assessments and sent inmates with mental health problems to one of three locations in the jail.  *Id.* at 1040.  Jail medical staff "*alone* decided whether an inmate should be housed in" one of the three locations.  *Id.* (emphasis added).

One of the three locations, called 3SW, was for mental health inmates who did not present a risk of harm to themselves or other inmates.  *Id.*  Cook and his

14

cellmate were housed in 3SW, despite Cook's cellmate's history of violent criminal behavior. *Id.* at 1042–43.

Keith argued that Sheriff Brown was deliberately indifferent to Cook's serious medical need by failing to separate inmates who had committed violent crimes—like Cook's cellmate—from inmates charged with nonviolent crimes— like Cook. *Id.* at 1050. We summarized Keith's argument thus: "Sheriff Brown created a substantial risk of harm by relying on [the medical] staff's determination[] that an inmate did not pose a substantial risk of harm to other inmates." *Id.* Keith therefore "aim[ed] to hold Sheriff Brown liable for *not* disregarding the expert medical opinions of [medical] staff." *Id.*

We held that "Keith's theory of liability does not square with the law. Simply put, the law does not require that Sheriff Brown ignore the determination and recommendation of [medical] staff." *Id.*

Hammonds's argument here is analogous to the argument in *Keith*. Hammonds argues that Martin—a nonmedical official—is liable for not disregarding Dr. Theakston's determination and recommendation to treat Hammonds's Type 1 diabetes with only short-acting insulin and for not intervening by supplying Hammonds with additional medication—long-acting insulin. Here, as in *Keith*, Martin was not required by law to ignore Dr. Theakston's

determination and recommendation regarding the proper treatment of Hammonds's

Type 1 diabetes.[5]

IV.

For the foregoing reasons, we affirm the District Court's grant of summary

judgment in favor of Dr. Theakston and Martin.

**AFFIRMED.**

---

[5] That a 911 operator called Martin to report Hammonds's medical condition does not change the outcome here. Martin was still entitled by law to rely on his medical staff to determine how to treat Hammonds's diabetes.